

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

*Overruled by*
*H-61 amended*

Honorable T. M. Trimble
First Assistant
State Supt. of Public Instruction
Austin, Texas

Dear Sir:

Opinion No. O-7346
Re: Whether tax-supported
junior colleges may
charge higher fee for
non-resident students.

We have your letter of August 8, 1946, which we quote, in part, as follows:

"Mr. Loftin (President of San Antonio Junior College) would like to know whether a tax-supported junior college such as the San Antonio Junior College may charge non-resident students a higher tuition fee than is charged the resident students. This problem is basic in view of the fact that the government in paying tuition for G. I.'s will according to Mr. Loftin's statement pay tuition rates equal to that paid on non-resident students." (Parenthetical insertion added)

Section 13 of the junior college act (Acts 1929, 41st Leg., ch. 290, H. B. 10, p. 648) as amended; Article 2815h, Vernon's Annotated Civil Statutes) provides as follows:

"Sec. 13. The Board of Trustees of the Junior College shall have the power to select a president, dean or other administrative officer, and, upon his recommendation, to select the faculty and other employees of the college, and to fix the compensation and manner of payment of such administrative head, faculty and employees. The Board shall also have the power to fix and collect fees for matriculation, laboratories, library, gymnasium and tuition."

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable T. M. Trimble, page 2

It is seen that this provision sets no limitation, minimum or maximum, on the amount of tuition to be paid. If there is any such express limitation, then it must be found elsewhere than in this act.

The 49th Legislature enacted a junior college appropriation act (Acts 1945, 49th Legislature, Ch. 234, S. B. 67, p. 319; Art. 2815j-2, Vernon's Annotated Civil Statutes). Section 2 of this Act provides, in part, as follows:

"Sec. 2. . . . It shall be mandatory that each institution participating in the funds herein provided shall collect from each pupil enrolled, matriculation and other session fees not less than the amounts provided by law and by other State-supported institutions of higher learning . . ." (Emphasis added)

This provision is a limitation as to minimum fees which may be charged by a junior college if it is to qualify for participation in State funds; however, no maximum scale of entrance fees is provided or prescribed.

It is noteworthy that the Act refers to the charging of fees "not less than provided by law and by other State-supported institutions of higher learning." This provision is obviously a reference to Articles 2654a, 2654b-1, and 2654c, Vernon's Annotated Civil Statutes, regulating the tuition rates of State educational institutions of collegiate rank. A junior college to be eligible under the appropriation act, therefore, must charge tuition fees not less than those prescribed by these articles; however, it is not limited by the act as to the maximum amount which may be charged.

It is significant that Section 2 of Art. 2654c, which covers non-resident students, provides a higher tuition fee for such students. Although a non-resident student is defined under Art. 2654c as one under 21 years of age whose family resides in another State or has resided within this State for less than 12 months prior to registration date, or a student of 21 or over who resides out of the State or who has resided within this State for less than 12 months prior to registration date. In other words, a non-resident student under Art. 2654c is one who resides

Honorable T. M. Trimble, page 3

outside this State, whereas a non-resident student of a tax-supported junior college is one who resides outside the confines of the junior college district. Therefore, the two are not the same; yet, the principle is important and it is significant that the Legislature provided a higher fee for non-resident students.

Another factor to be considered is Sec. 5 of Art. 2815h, which provides as follows:

"Sec. 5. The Board of Trustees of Junior College Districts shall be governed in the establishment, management and control of the Junior College by the General Law governing the establishment, management and control of Independent School Districts insofar as the General Law is applicable."

An examination of independent school district laws reveals no statute applicable to the question under consideration. Articles 2678a, 2696, 2904a, and 2922L(1) dealing with transfers, free tuition for scholastics 6 to 21, etc., obviously do not apply. Yet, an analogy may be drawn.

In Slocomb v. Cameron Independent School District, 116 Tex. 288, 288 S. W. 1064, the court had before it for consideration Art. 2760, R. S., 1911 (now Art. 2696). Certain students were duly transferred from other districts in the county to the Cameron district. The trustees of the Cameron district entered an order requiring their students to pay certain tuition charges less transfer money received. The father of these students refused to pay the tuition and instituted an action to restrain the school board from attempting to collect the amounts alleged to be due. The Supreme Court stated:

"It is our view that the Legislature, in enacting this article, did not intend to require any independent district in this state to educate a scholastic free of charge any longer than the funds transferred with such scholastic would pay such pupil's proportionate part of the expense of operating the schools of such district. In other words, as long as the state apportionment will operate the schools of the independent district, the transfer pupil, whose state apportionment is also transferred, is not required to pay tuition. But, when the schools of the independent district must continue their term with money raised by local taxes levied upon the property within such

Honorable T. M. Trimble, page 4

district, then the transfer pupil, a non-resident of such district, must pay a reasonable tuition."

And in the case of Love v. City of Dallas, 120 Tex. 351, 40 S. W. (2d) 20, it was stated by the court:

"For more than fifty years statutes have been in effect permitting transfers from one school district to another, and some consideration must be given to the construction of the Constitution which the enactment of these statutes implies. Since the Constitution does not permit the taxation of the people of a school district for the support of that district, except upon a vote of the people of the district, it is not debatable that the Legislature cannot compel one district to use its funds and properties for the education of scholastics from another district, without just compensation. However, in view of the long operation of the transfer statutes, we believe that where a school district has facilities and teachers in excess of those necessary for its own scholastics, the state has the power to require it to accept transfers from another district, but only upon the payment of reasonable compensation therefor. ***"

See also Huck v. Public Free Schools of the City of Austin, 290 S. W. 1118; Muse v. McKinney Independent School District, 35 S.W. (2d) 780; Opinions No. 0-2177 and No. 0-6333.

It is seen, therefore, that a payment of reasonable compensation to a school district is necessary upon the transfer of a non-resident scholastic to that district. Section 7 of Art. 2815h authorizes a junior college district to issue bonds for the construction, etc., of school buildings and to levy a tax to pay the same, and to levy taxes for the support and maintenance of the junior college. The limitation on the amount of taxes is twenty (20) cents "on the One Hundred Dollars of property valuation within said District. . ."

It would certainly be reasonable for non-resident scholastics to pay a higher tuition charge than resident scholastics, for otherwise a burden would be imposed upon the taxpayers of the district. Love v. City of Dallas, supra.

Honorable T. M. Trimble, page 5

You are, therefore, advised that the following is the opinion of this department:

1. A junior college organized under Article 2815h is authorized to fix reasonable tuition fees for its students, and fix the fee for non-resident students at a higher rate than that fixed for resident pupils.

2. In no event may the rates in districts receiving state aid (S. B. 67, supra) be less than "the amounts provided by law and by other State-supported institutions of higher learning."

3. As to what would constitute a reasonable tuition fee both for residents and non-residents is a matter for the sound discretion of the board of trustees of the junior college district. Several elements enter into such determination. Love v. City of Dallas, supra.

4. It is our opinion that a reasonable tuition rate to be charged a non-resident student by a junior college receiving state aid would be one which is sufficient to compensate the college for the education of such non-resident, less state aid received for such student.

We are enclosing for your examination copies of Opinions No. 0-5891 and No. 0-6957 which deal with students who are ex-servicemen.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By ~~George W. Sparks~~
George W. Sparks
Assistant

AUG 1946

~~ATTORNEY GENERAL OF TEXAS~~

GWS/JCP
Enclosures-2



APPROVED
OPINION COMMITTEE
BY
CHAIRMAN